```
 1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
 2                        AUSTIN DIVISION

 3  JOHN ANTHONY RUSK, JUDY RUSK,                ) AU:14-CV-00549-LY
    v.                                           )
 4  NOVARTIS PHARMACEUTICALS CORPORATION, WYETH-AYERST )
    LABORATORIES, INC., SANDOZ PHARMACEUTICALS CORPORATION, )
 5  TEVA PHARMACEUTICALS USA INC., BARR LABORATORIES, INC., )
    EON LABS, INC., SANDOZ, INC.,                )
 6  -----------------------------------------------------------------
    MARGARET HALTON PRIEST                       ) AU:15-CV-00822-LY
 7  v.                                           )
    SANDOZ PHARMACEUTICALS CORPORATION, NOVARTIS )
 8  PHARMACEUTICALS CORPORATION, SANDOZ INC.     ) NOVEMBER 1, 2016

 9        **************************************************
            TRANSCRIPT OF HEARING ON MOTION FOR CONSOLIDATION
10                  BEFORE THE HONORABLE LEE YEAKEL
          **************************************************
11
    FOR THE PLAINTIFFS:      GUY MICHAEL HOHMANN
12                           HOHMANN, BROPHY & SHELTON, PLLC
                             210 BARTON SPRINGS ROAD, SUITE 500
13                           AUSTIN, TEXAS 78704

14                           JUSTIN L. WILLIAMS
                             COLE EASLEY SCIBA & WILLIAMS PC
15                           302 W. FORREST STREET
                             VICTORIA, TEXAS 77901
16
    FOR THE DEFENDANTS:      ELIZABETH ROSS HADLEY
17                           GREENBERG TRAURIG LLP
                             300 W. 6TH STREET, SUITE 2050
18                           AUSTIN, TEXAS 78701

19                           SARA K. THOMPSON
                             GREENBERG TRAURIG, LLP, TERMINUS 200
20                           3333 PIEDMONT ROAD, NE, SUITE 2500
                             ATLANTA, GEORGIA 30305
21
    COURT REPORTER:          ARLINDA RODRIGUEZ, CSR
22                           501 WEST 5TH STREET, SUITE 4152
                             AUSTIN, TEXAS 78701
23                           (512) 391-8791

24  Proceedings recorded by computerized stenography, transcript

25  produced by computer.
```

14:00:23  1          (Open Court)

14:00:23  2              THE COURT:  We are here today on the motion to

14:00:30  3      consolidate Cause Number 14-CV-549, *Rusk v. Sandoz, Inc.*, with

14:00:38  4      Cause Number 15-CV-822, *Priest v. Sandoz, Inc.*

14:00:43  5              Let me get announcements by the parties, please.

14:00:49  6              MR. HOHMANN:  Guy Hohmann and my cocounsel

14:00:51  7      Justin Williams on behalf of the Rusk plaintiffs and on behalf

14:00:55  8      of the Priest plaintiffs.

14:00:57  9              THE COURT:  All right.  And for the defendants, first

14:00:59  10     in the *Rusk* case?

14:01:01  11             MS. HADLEY:  Your Honor, Elizabeth Hadley of

14:01:05  12     Greenberg Traurig and my colleague Sara Thompson from our

14:01:11  13     Atlanta Office on behalf of Sandoz in both cases.

14:01:13  14             THE COURT:  All right.  Thank you.

14:01:15  15             All right.  Mr. Hohmann, Mr. Williams, your

14:01:18  16     motions -- I have read the motions and the responses and

14:01:24  17     anything else I've received with regard to these cases.  But I

14:01:30  18     thought I would hear from you-all today instead of just ruling

14:01:35  19     on the pleadings.  So let me hear from you as to why these

14:01:40  20     cases should be consolidated.

14:01:44  21             MR. HOHMANN:  Would you like me to argue from the

14:01:46  22     podium, Your Honor?

14:01:47  23             THE COURT:  Yes.  It's helpful to an old, blind, and

14:01:50  24     deaf man from there where I can see you and you're at a

14:01:57  25     microphone.

| | | |
|---|---|---|
| 14:01:57 | 1 | MR. HOHMANN:  Thank you, Your Honor.  As the Court |
| 14:02:00 | 2 | noted, we're here on a motion to consolidate under Rule 42(a). |
| 14:02:05 | 3 | Under Rule 42(a) it's appropriate -- or if the action before |
| 14:02:09 | 4 | the Court involve a common question of law or fact, the Court |
| 14:02:13 | 5 | may do one of three things:  The thing we're asking the Court |
| 14:02:20 | 6 | to do is consolidate the actions. |
| 14:02:22 | 7 | In these two cases there is one defendant, and the |
| 14:02:25 | 8 | common defendant in both of the cases is Sandoz.  The |
| 14:02:29 | 9 | allegations in the case being made both by Rusk and by Priest |
| 14:02:35 | 10 | allege that the plaintiffs were prescribed amiodarone for an |
| 14:02:39 | 11 | off-label use.  In addition, the plaintiffs both allege that, |
| 14:02:44 | 12 | after ingesting the drug, they both developed |
| 14:02:47 | 13 | amiodarone-induced lung disease.  Thirdly, both plaintiffs |
| 14:02:52 | 14 | allege that they died less than a year later.  Fourthly, Your |
| 14:02:58 | 15 | Honor, both plaintiffs allege that Sandoz marketed amiodarone |
| 14:03:03 | 16 | to physicians for off-label uses with knowledge of its adverse |
| 14:03:06 | 17 | effects.  And, finally, Your Honor, both plaintiffs allege that |
| 14:03:11 | 18 | Sandoz failed to provide the decedents an FDA-mandated |
| 14:03:16 | 19 | medication guide containing a plain English description of the |
| 14:03:20 | 20 | dangers of the drug and its classification as a last-line |
| 14:03:25 | 21 | treatment. |
| 14:03:26 | 22 | Getting to the causes of action, Your Honor, both of |
| 14:03:29 | 23 | the plaintiffs allege causes of action for wrongful death, |
| 14:03:33 | 24 | gross negligence, off-label marketing, and negligence, per se. |
| 14:03:38 | 25 | And I've got three different cases -- Fifth Circuit |

| | |
|---|---|
| 14:03:45 | 1 cases I was going to refer to.  These are all cited in our |
| 14:03:52 | 2 papers.  The first case, Your Honor, that I wanted to pay |
| 14:04:02 | 3 particular attention to is actually cited on page 4 of our |
| 14:04:06 | 4 reply brief.  Very similar facts.  The name of that case is |
| 14:04:11 | 5 *Kershaw v. Sterling Drug.*  It's a Fifth Circuit 1969 case. |
| 14:04:16 | 6          In that case Ms. Kershaw had taken a drug, Alaren, to |
| 14:04:21 | 7 help her with a condition that was affecting her retina.  She |
| 14:04:25 | 8 ended up suing the manufacture, Sterling Drug, because they |
| 14:04:29 | 9 hadn't provided sufficient warnings about possible side effects |
| 14:04:33 | 10 of the drug. |
| 14:04:34 | 11          A companion case was consolidated the day before |
| 14:04:42 | 12 trial.  It didn't say why, but it was the day before Kershaw |
| 14:04:46 | 13 was to go to trial, it was consolidated with another companion |
| 14:04:49 | 14 case.  It was a verdict for the plaintiff, and on appeal the |
| 14:04:52 | 15 Fifth Circuit held that consolidation was proper under those |
| 14:04:57 | 16 circumstances, specifically noting the common questions of |
| 14:05:02 | 17 fact:  One, what caused the chloroquine retinopathy, if I'm |
| 14:05:10 | 18 saying that right -- I'm sure I'm not.  But what caused her eye |
| 14:05:13 | 19 condition.  The second common question of fact was the |
| 14:05:15 | 20 defendant's knowledge of the disease.  The third common |
| 14:05:17 | 21 question of fact was the nature of the defendant's warnings |
| 14:05:21 | 22 that were supplied with the medication. |
| 14:05:24 | 23          The Fifth Circuit also held that the common questions |
| 14:05:27 | 24 of law in that case were, one, the defendant's duty and, two, |
| 14:05:31 | 25 the reasonableness of the warnings. |

14:05:34   1      The *Kershaw* opinion also I think is instructive,

14:05:41   2   Your Honor in the sense that it specifically noted that the

14:05:44   3   trial court judge sufficiently emphasized the importance of

14:05:51   4   separating the Kershaw and the companion case to the jury's

14:05:53   5   consideration and their ultimate verdict.  And the opinion

14:05:56   6   noted that it was apparent that the jury did just that.

14:06:00   7      Other cases, Your Honor, that are cited in our

14:06:05   8   motion, also Fifth Circuit cases, we start with -- on page 2 of

14:06:09   9   our motion, *Frazier v. Garrison Independent School District*,

14:06:14  10   Fifth Circuit 1993, and then also the Gentry case on page 3 of

14:06:20  11   our motion, *Gentry v. Smith*, Fifth Circuit 1973.

14:06:25  12      Those cases note that the stated purpose of

14:06:27  13   Rule 42(a) is to avoid unnecessary cost or delay and, hence,

14:06:32  14   the decision to invoke the rule is entirely within the trial

14:06:36  15   court's discretion, as it seeks to promote the administration

14:06:42  16   of justice.  We also list the factors, Your Honor, that the

14:06:45  17   courts have looked to.  Whether the parties would be prejudiced

14:06:50  18   is one issue and, of course, serving the interest of judicial

14:06:55  19   economy.

14:06:56  20      In this case, Your Honor, we've had something happen

14:07:00  21   that's never happened in my career, and it led to some delays

14:07:07  22   in the Rusk case.  We've cited those in our reply.  Initially

14:07:15  23   my cocounsel's wife became gravely ill and required several

14:07:22  24   hospitalizations, and that did lead to some delays.  During the

14:07:27  25   May time frame, another delay, that's referenced in our -- in

14:07:32  1  our reply brief but also in our supplemental motion; that is,

14:07:37  2  we had a client during the course of this case that has

14:07:44  3  developed dementia.

14:07:47  4        Mr. Williams first met with the client in May of this

14:07:50  5  year to begin preparing her for her depositions, and he spent

14:07:54  6  three days with her in my office.  He then met with her again

14:08:04  7  approximately two weeks later, again in my office, and that

14:08:08  8  time we had some of our cocounsel involved in some of these

14:08:10  9  cases.  And that cocounsel who is not here today first noticed

14:08:14  10 something seemed to be a bit off.

14:08:16  11       She asked her what medication she was taking.  She

14:08:21  12 replied, and that set us on a course of we need to have her

14:08:25  13 evaluated by a neurologist because she did not remember I don't

14:08:32  14 think much at all what was discussed three weeks earlier over a

14:08:36  15 three-day period -- two weeks earlier, excuse me, over a

14:08:40  16 three-day period.

14:08:41  17       There were some issues about what neurologists could

14:08:45  18 take what insurance.  But, ultimately, Ms. Rusk got in to a

14:08:51  19 neurologist, and that neurologist has made a diagnosis of

14:08:58  20 dementia.

14:08:58  21       Mr. Williams and I consulted with former general

14:09:04  22 counsel to the state bar about ethical considerations.  That

14:09:12  23 counsel reminded us of Rule 1.02(g) of the Texas Disciplinary

14:09:17  24 Rules of Professional Conduct, which provides that a lawyer

14:09:21  25 shall take action to secure the appointment of a guardian for a

14:09:27  1  client whenever the lawyer reasonably believes that the client

14:09:29  2  lacks legal competence and that such action should be taken to

14:09:33  3  protect the client.

14:09:35  4       We recommended that the client retain probate counsel

14:09:45  5  and a guardianship proceeding was filed I believe last Thursday

14:09:49  6  or Friday.  That's in Williamson County.  I'm not a probate

14:09:53  7  lawyer, but it's my understanding that those proceedings

14:09:56  8  typically take 90 to 120 days to be resolved.

14:10:03  9       Other factors, Your Honor, getting back to the

14:10:06  10  factors that the courts look to, which I believe militate in

14:10:11  11  favor of consolidation here:  Do we have shared legal theories

14:10:15  12  and facts?  Do the cases involve same defendant and attorneys,

14:10:19  13  such as the *Morrison v. Amway* case cited on page 4 of our

14:10:23  14  motion.  Whether the cases -- another factor, whether the cases

14:10:28  15  are at similar stages of pretrial preparation -- *Mills v. Beech

14:10:34  16  Aircraft*, another Fifth Circuit case.

14:10:35  17       And, Your Honor, I think things -- if we look at them

14:10:41  18  prior to last Thursday, I think the cases were at different

14:10:45  19  stages of proceeding with discovery technically I think having

14:10:51  20  just recently closed in *Rusk* and discovery just commencing in

14:10:56  21  the *Priest* case.  But, Your Honor, I think if we recognize that

14:11:01  22  we need 90 to 120 days to have a guardian appointed for

14:11:06  23  Ms. Rusk, then I think we're actually much closer to being on a

14:11:12  24  similar path.

14:11:14  25       Other factors, Your Honor, continuing the list:

14:11:16  1  Whether consolidation will eliminate duplicative discovery.

14:11:29  2  Certainly that would occur here, Your Honor.  And then, of

14:11:32  3  course, conserving judicial resources.

14:11:34  4        I believe that, depending upon the number of

14:11:40  5  stipulations the parties could reach, we're going to be able to

14:11:43  6  eliminate several hours of testimony.  And rather than having

14:11:46  7  two five-hour trials, I think we could probably get it done

14:11:49  8  with one probably six, maybe seven-hour trial, if the Court

14:11:54  9  were -- were inclined to give us a little extra time to get rid

14:11:59  10  of two cases.

14:12:00  11        Your Honor, that's all I have to add, unless the

14:12:03  12  Court has any further questions?

14:12:05  13        THE COURT:  No.  I don't have any questions.  Let me

14:12:08  14  hear from the respondent.

14:12:10  15        MS. THOMPSON:  Thank you, Your Honor.  Sara Thompson.

14:12:17  16  You may remember we were here back in February in the Rusk case

14:12:21  17  for the scheduling conference.  What Mr. Hohmann has just said

14:12:25  18  is certainly a possible grounds for continuance in *Rusk* -- both

14:12:28  19  Mr. Williams' wife's health conditions and also the plaintiff's

14:12:31  20  mental issues.  But neither of those has anything to do with

14:12:35  21  consolidation in this case, and that's what they've moved for.

14:12:39  22  They haven't asked Your Honor for a continuance.  They've asked

14:12:41  23  for consolidation, hoping that we're going to roll all of these

14:12:46  24  dates back to the *Priest* dates that are 10 months behind *Rusk*.

14:12:49  25        They just talked about 90 to 120 days.  There's

14:12:51  1  certainly nothing preventing them from asking the Court for a

14:12:54  2  90- to 120-day continuing in *Rusk* of all of the remaining

14:12:59  3  deadlines and the trial date, but that's not what they've asked

14:13:01  4  for.  They've asked to move these into one case that would

14:13:03  5  presumably be under the *Priest* deadlines that are 10 months

14:13:07  6  back.

14:13:07  7       Before I get into some of the other issues that they

14:13:11  8  didn't mention, we just heard about *Kershaw v. Sterling*.  I

14:13:13  9  think it's really important to note in footnote 2, it notes

14:13:16  10  that there was no grounds given for the opposition to the

14:13:21  11  motion to consolidate.  It was not apparent from the record.

14:13:24  12  Obviously we're in a different situation here.  We've argued

14:13:26  13  prejudice to Sandoz, and we've also argued the reasons why we

14:13:29  14  don't believe that this fits the consolidation factors more

14:13:32  15  recently than *Kershaw* outlined by the Fifth Circuit.  So I

14:13:36  16  think that's one big distinction there.

14:13:39  17       And we heard about eliminating duplicative discovery,

14:13:42  18  and that's just simply not true.  We're going to have different

14:13:43  19  documents.  We're going to have different witnesses both

14:13:45  20  because these drugs were dispensed and manufactured at

14:13:48  21  different times, and so the policies changed over time.  The

14:13:52  22  version of the labeling in place changes over time.  The

14:13:55  23  version of the medication guide changes over time.  So we're

14:13:58  24  going to have somewhat different documents.  And that ignores

14:14:01  25  all of the factual differences between the two patients.

| | | |
|---|---|---|
| 14:14:04 | 1 | But they also ignored, Your Honor, the real reason |
| 14:14:07 | 2 | that they're requesting this, and that's because they haven't |
| 14:14:10 | 3 | served any expert reports or disclosures in *Rusk* and the |
| 14:14:14 | 4 | deadline passed September 15th.  They never asked for an |
| 14:14:17 | 5 | extension of that deadline.  They never came to the Court and |
| 14:14:20 | 6 | said we need this additional time due to either Ms. Rusk's |
| 14:14:24 | 7 | incapacity or due to the issues with Mr. Williams' wife's |
| 14:14:28 | 8 | health. |
| 14:14:28 | 9 | And we have -- we went back and looked at these |
| 14:14:31 | 10 | today.  We first learned of Ms. Rusk's mental issues and why |
| 14:14:35 | 11 | she maybe wasn't going to be able to give a deposition back in |
| 14:14:37 | 12 | July.  But we filed a motion to compel that was granted by the |
| 14:14:40 | 13 | magistrate that included her deposition.  And the rules for |
| 14:14:45 | 14 | when somebody is incapacitated and unable to testify aren't |
| 14:14:49 | 15 | just that you get a letter from a doctor that says she has mild |
| 14:14:52 | 16 | dementia, which is what they filed with the Court on Friday. |
| 14:14:56 | 17 | There's a showing that needs to be made, and I don't think |
| 14:14:59 | 18 | they've even met that. |
| 14:15:00 | 19 | And without her testimony, based on the fact that |
| 14:15:02 | 20 | we've deposed everyone else in the case -- all of the treating |
| 14:15:04 | 21 | physician, the prescribing physicians, Mr. Rusk's two children |
| 14:15:08 | 22 | and his stepdaughter who they now want to have appointed as the |
| 14:15:11 | 23 | guardian -- none of them have knowledge of whether or not |
| 14:15:14 | 24 | Mr. Rusk received a medication guide.  They're not going to |
| 14:15:17 | 25 | have anyone who is going to be able to testify that he |

14:15:20  1  definitively did not receive a medication guide.  All they have

14:15:24  2  is their complaint, and it's not evidence.

14:15:25  3       And so we have a motion for summary judgment that

14:15:27  4  we're ready to file two weeks from today, Your Honor, that is

14:15:30  5  going to lay out we have completed fact discovery in *Rusk*.  We

14:15:34  6  have taken the depositions of all of these treating physicians.

14:15:37  7  We've disclosed our experts.  We put our cards on the table.

14:15:40  8  We said this is what our experts are going to say.  Based on

14:15:43  9  all of the discovery completed to date, the 25,000 pages of

14:15:47  10  documents we've produced that include batch records that show

14:15:50  11  every single shipment of amiodarone that could have been the

14:15:54  12  ones Mr. Rusk's three doses came from were shipped with

14:15:57  13  medication guides.  There's documentation of that.  An employee

14:16:00  14  has actually reviewed all of that and completed an affidavit.

14:16:04  15       We've met our burden even though we're not the ones

14:16:07  16  who have the burden, and we've put our expert reports out

14:16:10  17  there.  They haven't served anything.  At a deposition on

14:16:13  18  October 6th, Mr. Williams said that they planned to rely on

14:16:16  19  treating physicians, but they've never served a disclosure of

14:16:20  20  which treating physicians, what opinions, where we can find

14:16:23  21  them in the medical records, nothing.  They've never served

14:16:26  22  anything on experts in this case.

14:16:27  23       And so *Rusk* is ready to go.  It's teed up for a

14:16:31  24  motion for summary judgment that we think is going to be very

14:16:33  25  compelling.  And the reason that Plaintiffs are filing this

| | |
|---|---|
| 14:16:36 | 1 |
| 14:16:38 | 2 |
| 14:16:41 | 3 |
| 14:16:44 | 4 |
| 14:16:47 | 5 |
| 14:16:49 | 6 |
| 14:16:52 | 7 |

1 motion to consolidate is because they need more time, and they
2 know that if they come to Your Honor and they say they'd like a
3 continuance, Your Honor has been very clear at both scheduling
4 conferences that you don't really like continuances.  So it
5 probably would be denied, so they think this is maybe a more
6 effective strategy.  But the factors that they just mentioned
7 counsel for a continuance and not for consolidation.

8      And the cases that we cited in our opposition -- and
9 I'm happy to provide copies of any of them for Your Honor.
10 Some of them are the same ones that they just handed up -- talk
11 about prejudice as being a primary concern when it comes to
12 whether or not to consolidate.  You have to worry about whether
13 or not it's going to confuse the jury.

14      We have one patient who took amiodarone from 2006 off
15 and on until his death in 2012.  We have another patient who
16 didn't take amiodarone until July 2013 and only took it for a
17 few months.  The facts are very different.  And, Your Honor, I
18 have here -- and I'm happy to provide a copy to the Court and a
19 copy to the counsel -- three pages that just lay out and charts
20 the differences in dates and the differences -- the differences
21 in facts between the two cases.

22      On the first page we have the different dates of when
23 things were filed, what the deadlines are.  The ones in green
24 on that first page are dates that have already passed.  They're
25 deadlines that either have or have not been met.  And Sandoz

14:17:56  1  believes that it's produced everything it was required to, has

14:17:58  2  fully complied with discovery, and it's ready to file its MSJ

14:18:03  3  in *Rusk*.  Those dates aren't even coming up in *Priest* until

14:18:06  4  late next year.  So we're at two very different stages, not

14:18:10  5  just 90 to 120 days, ten months of difference.

14:18:12  6       Then on the next slide we have a summary of the

14:18:14  7  discovery that's been completed in the two cases.  Under the

14:18:17  8  depositions, the ones in green are ones that we took.  The one

14:18:20  9  in red is the one that the plaintiffs subpoenaed.  Those are

14:18:22 10  treating physicians, family members, and a pharmacy manager.

14:18:27 11  Those depositions are done.

14:18:28 12       We have document production.  Sandoz produced over

14:18:30 13  25,000 pages in *Rusk*.  Plaintiffs produced over 12,000 pages,

14:18:34 14  most of which are medical records, but they've made a

14:18:37 15  significant production.  We just received last night and we've

14:18:40 16  been going through it this morning the first production of

14:18:42 17  documents in *Priest*.  We just received the first records

14:18:45 18  showing prescriptions, three of which were -- were filled.  And

14:18:48 19  that's on -- sorry -- two of which were filled on the third

14:18:52 20  page in *Priest* with Sandoz product.

14:18:55 21       Before that we had a complaint that at different

14:18:57 22  dates at a different dosage and had an NDC code that didn't

14:19:00 23  resolve to a Sandoz number.  It resolved to a different

14:19:03 24  manufacturer.  So we've just gotten that.  We're just starting

14:19:06 25  discovery in *Priest*, and in *Rusk* it's almost done.

| 14:19:09 | 1 | And we have totally different time lines here.  We |
| 14:19:11 | 2 | have a different date of death, we have different physicians, |
| 14:19:14 | 3 | we have different pharmacies -- not even the same chain.  And |
| 14:19:17 | 4 | the thing that's complicated about this it's not like Sandoz |
| 14:19:20 | 5 | just manufactures this drug and ships it to individual |
| 14:19:24 | 6 | pharmacies to dispense to patients.  That may be what Plaintiff |
| 14:19:27 | 7 | believes, but that's not the case. |
| 14:19:28 | 8 | There's one of two things that always happen.  It |
| 14:19:30 | 9 | either goes to a distributor, like McKesson, who then sells it |
| 14:19:34 | 10 | and ships it to pharmacies.  Or in the case of a big pharmacy |
| 14:19:38 | 11 | chain, it goes to a main distribution center who then doles it |
| 14:19:41 | 12 | out and ships it.  And so there's a lot of places along the way |
| 14:19:44 | 13 | after it left Sandoz that medication guides may be separated |
| 14:19:47 | 14 | from the drug.  But Sandoz has met its obligations, and we've |
| 14:19:51 | 15 | produced documents in *Rusk* to show that we met our obligation |
| 14:19:55 | 16 | to ship it with the medication guides. |
| 14:19:56 | 17 | And we're ready to go.  There's no evidence, there's |
| 14:19:58 | 18 | no expert, there's no witness for Plaintiffs in *Rusk* who is |
| 14:20:01 | 19 | going to be able to say that he did not get medication guides. |
| 14:20:05 | 20 | We've asked the question of the family members.  We've asked |
| 14:20:08 | 21 | the questions of the pharmacist that they deposed last week. |
| 14:20:11 | 22 | So we're in two different postures, and one of the |
| 14:20:15 | 23 | concerns for consolidation is whether or not it will lengthen |
| 14:20:18 | 24 | the time to resolution or shorten.  For *Rusk* there's no |
| 14:20:22 | 25 | question it will lengthen it.  We're ready to file a motion in |

14:20:26  1   two weeks.  If they get what they're asking for, they're

14:20:28  2   pushing all of the dates back 10 months.  So that's definitely

14:20:31  3   going to lengthen it.  And that will necessarily increase the

14:20:34  4   burden and expense, which is another factor because we're going

14:20:37  5   to then presumably have them ask to reopen discovery and take

14:20:41  6   additional depositions and receive additional documents that

14:20:44  7   otherwise wouldn't be permitted in *Rusk* because discovery is

14:20:49  8   over.  They also presumably would want to get experts in *Rusk*

14:20:51  9   that they have not disclosed to this point which would be a

14:20:53  10  significant prejudice to us because they missed their deadline

14:20:56  11  and we have a strong motion on that basis.

14:20:59  12          So all of these factors counsel against

14:21:03  13  consolidation.  The only similarities are it's the same drug,

14:21:05  14  same defendant, and the same counsel.  But the other thing is

14:21:08  15  that this is a very factually intensive inquiry in each case.

14:21:13  16  We're going to have two different stories on what was the

14:21:16  17  patient's condition prior to starting amiodarone.  What was

14:21:19  18  their course after they started amiodarone?  What did their

14:21:22  19  physicians who prescribed it know about the risks and what did

14:21:25  20  they tell them about their risks?  What were the signs and

14:21:29  21  symptoms they developed of amiodarone issues?  Were there chest

14:21:35  22  x-rays that were interpreted?  Were there tests that were done?

14:21:37  23  How did they respond to medication and other treatment once

14:21:40  24  they developed their lung conditions?  What caused their death?

14:21:42  25          The expert opinions on these are going to be

14:21:45  1  different.  These are all going to be factually dependent and

14:21:49  2  different, and that counsels against consolidation.  On a broad

14:21:52  3  level, yes, they're very similar, but they're not the same, not

14:21:55  4  even close to the same.

14:21:56  5        And the experts that we have worked with on the

14:21:58  6  reports that we've produced did a very deep dive on the medical

14:22:02  7  records that we have and looked at whether or not each chest

14:22:05  8  x-ray film supports a diagnosis of amiodarone-induced pulmonary

14:22:11  9  toxicity, whether or not the patient's response to steroids is

14:22:14  10 consistent with it, whether or not other medical conditions and

14:22:18  11 complications caused their death.  These are factually

14:22:21  12 specific.

14:22:22  13       What they also didn't mention is, after we were here

14:22:22  14 in February in *Rusk* and we set a trial date, the plaintiffs

14:22:24  15 moved for consolidation of all of the federal court cases

14:22:27  16 involving amiodarone from all manufacturers into a

14:22:30  17 multidistrict litigation.  And the analysis is the same, it's

14:22:33  18 not the same, as a motion to consolidate.  But the JPML

14:22:38  19 actually denied consolidation, finding that the factual

14:22:41  20 differences between the cases counseled against consolidation.

14:22:45  21 It's the same issue here.

14:22:46  22       And they didn't serve their first discovery in *Rusk*

14:22:49  23 on us until the end of June.  We served discovery and we served

14:22:54  24 a request for Ms. Rusk's deposition on June 1st, but there was

14:22:56  25 nothing happening in this case until the end of June.

14:22:59   1          So this crisis of not completing discovery, of not

14:23:02   2    having experts, whatever it is that caused them to feel like

14:23:05   3    this was their only option is entirely of Plaintiff's own

14:23:09   4    making.  We've complied with our obligations at great effort

14:23:12   5    and expense.  Let me just tell you September was a very busy

14:23:15   6    month in our firm because of having to get everything done

14:23:17   7    before the deadline, but we did it and we're ready.  And it

14:23:20   8    would prejudice us if all of that was for not.

14:23:23   9          So unless Your Honor has any questions?

14:23:27  10          MR. WILLIAMS:  May I respond, Judge?

14:23:29  11          THE COURT:  You may.

14:23:35  12          MR. WILLIAMS:  Your Honor, this is Justin Williams on

14:23:38  13    the behalf of the Priest plaintiffs, and this is not going to

14:23:41  14    be the easiest response I've ever made in my life.  It's

14:23:45  15    probably going to be one of the most difficult.

14:23:50  16          I'm going to start off by giving you a little

14:23:53  17    background of what's happened in *Rusk*.  In May, as Mr. Hohmann

14:23:58  18    indicated, we had a request from Sandoz for the deposition of

14:24:01  19    Judy Rusk, the widow.  I met with her -- Ms. Rusk for three

14:24:06  20    days to produce Ms. Rusk for deposition.  And as far as I could

14:24:11  21    tell, she went from being a person who'd never been deposed

14:24:14  22    before to somebody who could answer counsel's questions.  And I

14:24:19  23    called them up and told them I would be willing to produce her

14:24:21  24    before the end of May.

14:24:22  25          We went to the motion to join all these cases in

14:24:32   1   Chicago.  And I was called by my daughter who told me my wife

14:24:35   2   had been hospitalized, and she got very ill and almost died

14:24:38   3   twice over the 12 weeks.  It was a very difficult time,

14:24:51   4   probably the most difficult time I've had as a lawyer because

14:24:55   5   it involved my wife who had stood beside me in a lot of

14:24:58   6   different difficulties, including a cancer battle.

14:25:02   7          During that time I took three days off to come and

14:25:05   8   visit with Judy Rusk in the attempt to have her deposed again.

14:25:09   9   And during that time it became clear that she had not

14:25:12  10   understood or remembered what I had talked to her about three

14:25:15  11   days later -- three days -- two weeks before.

14:25:16  12          At that time when I went back, my wife had gotten out

14:25:23  13   of the hospital and the three days I was gone she became

14:25:26  14   dehydrated and was re-hospitalized with blood pressure of 72

14:25:31  15   over 48 and they couldn't get a pulse.  She almost died again.

14:25:36  16   I was out of commission, basically, until mid-July and we

14:25:40  17   didn't do the things I would normally do in a case.

14:25:43  18          However, after that time we started sending

14:25:46  19   discovery, and I spent an inordinate amount of time -- the

14:25:51  20   reason Sandoz is ready for trial in this case -- I spent 25

14:25:55  21   years as a defense lawyer, and I wouldn't be sitting in the

14:25:58  22   chairs saying the things they're saying because the reason

14:26:02  23   they're ready is because I spent an inordinate amount of time

14:26:05  24   attempting to attend depositions and making sure that they were

14:26:09  25   ready for trial and giving them every deposition they wanted.

| | | |
|---|---|---|
| 14:26:13 | 1 | Prior to the discovery -- the deadline for experts, |
| 14:26:18 | 2 | we had a choice.  We didn't have all the documents.  We weren't |
| 14:26:21 | 3 | ready for our experts.  We could file for a consolidation or a |
| 14:26:25 | 4 | continuance, and we were offered a continuance or we were |
| 14:26:28 | 5 | offered something by Sandoz that we didn't feel was in the best |
| 14:26:32 | 6 | interests of our client.  Mr. Hohmann and I got an ethics |
| 14:26:35 | 7 | opinion and we looked at the rules, and we were told we needed |
| 14:26:38 | 8 | to get a guardianship. |
| 14:26:40 | 9 | They talk about there was a motion to compel filed in |
| 14:26:44 | 10 | July, and they asked for Judy Rusk's deposition.  And we didn't |
| 14:26:48 | 11 | oppose that.  The reason is she hadn't been to the doctor at |
| 14:26:51 | 12 | that time.  I didn't have anything other than my -- I told them |
| 14:26:55 | 13 | I didn't think she could be deposed, but I had nothing that I |
| 14:26:58 | 14 | could actually say to the Court.  And I intended to try to |
| 14:27:01 | 15 | depose -- have her deposed, and then she went to the |
| 14:27:05 | 16 | neurologist and I was told that, first, she couldn't be relied |
| 14:27:09 | 17 | on which gave me pause as to what my ethical duties as a lawyer |
| 14:27:13 | 18 | were, and she hadn't been told about her condition by family |
| 14:27:18 | 19 | members. |
| 14:27:18 | 20 | I couldn't, according to the ethics lawyer, produce |
| 14:27:22 | 21 | her for deposition and have the opposition over here start |
| 14:27:25 | 22 | questioning her about her condition and about the different |
| 14:27:28 | 23 | things and her not be able to protect herself as a witness nor |
| 14:27:33 | 24 | even understand her condition. |
| 14:27:35 | 25 | Her family finally had the doctor -- the family and |

| | | |
|---|---|---|
| 14:27:39 | 1 | the doctor finally sat down several weeks ago.  The doctor sent |
| 14:27:43 | 2 | the letters to me.  And tomorrow we'll file a motion to reopen |
| 14:27:49 | 3 | the motion to compel, telling the Court that we are of the |
| 14:27:53 | 4 | opinion we can't produce Ms. Rusk.  We didn't have anything to |
| 14:27:58 | 5 | say at the original time of the motion to compel.  We have -- I |
| 14:28:03 | 6 | mean, we couldn't -- what I could say was, as a lawyer, I don't |
| 14:28:07 | 7 | think she's capable of being a witness, but that's not really |
| 14:28:12 | 8 | any evidence for the Court to consider.  And I didn't have |
| 14:28:15 | 9 | anything from a doctor that said I couldn't produce her, so I |
| 14:28:19 | 10 | was attending -- intending to produce her until the time I was |
| 14:28:22 | 11 | given medical instructions I can't. |
| 14:28:28 | 12 | If the Judge rules -- if you rule against our |
| 14:28:31 | 13 | consolidation, which we -- the reason we filed a consolidation |
| 14:28:35 | 14 | instead of a continuance when we saw we were going to have |
| 14:28:38 | 15 | trouble with the deadlines because of my situation and Ms. Rusk |
| 14:28:41 | 16 | is because, if we file a continuance, Judge, we're going to get |
| 14:28:45 | 17 | off the docket.  We'll be -- I don't know when we'll be able to |
| 14:28:48 | 18 | get a trial date again, but it will be certainly after the |
| 14:28:52 | 19 | *Rusk* -- the *Priest* trial date. |
| 14:28:55 | 20 | THE COURT:  Well, let me stop you right there.  What |
| 14:28:57 | 21 | makes you think it will be after the *Priest* trial date? |
| 14:29:01 | 22 | MR. WILLIAMS:  Well, just from understanding what you |
| 14:29:03 | 23 | had told us about your docket at the time of the initial |
| 14:29:06 | 24 | scheduling conference, we thought -- I was of the opinion, at |
| 14:29:10 | 25 | least maybe mistaken, that we would be -- if we did that, if we |

14:29:14  1  filed a continuance, we would be set further back than *Priest*.

14:29:19  2  And my problem with that was, the further we got set back, the

14:29:24  3  more my client would not understand anything that happened.

14:29:27  4       The reason she filed this case was because of her

14:29:30  5  husband, and I wanted her to have the benefit of whatever

14:29:33  6  happened in this case.  I thought I owed that to her as her

14:29:36  7  lawyer.  So I filed a consolidation instead of a continuance

14:29:40  8  to -- in order to try to -- I thought it was the best way that

14:29:44  9  we could -- that we would get our deadlines moved, that we

14:29:48  10 could get her the guardianship, and do -- fulfill our ethical

14:29:53  11 obligations to her.

14:29:54  12      And also, Judge, frankly, you know, they -- I'm

14:29:57  13 responding to this because that's what they say is our real

14:30:01  14 reason.  Certainly it plays a part.  But we also think that,

14:30:06  15 unlike what they're saying about the differences, the

14:30:09  16 difference in medical causation in this case is going to be

14:30:13  17 very few witnesses.  This is an issue -- and I didn't intend to

14:30:18  18 argue a summary judgment that hasn't been filed, but we think

14:30:21  19 that --

14:30:22  20      THE COURT:  Well, then don't argue a summary

14:30:24  21 judgment.

14:30:25  22      MR. WILLIAMS:  Okay.  Well, I was going to respond to

14:30:27  23 counsel, but I won't argue it then.

14:30:28  24      THE COURT:  Well, I obviously am not going to

14:30:31  25 consider it because I haven't read the motion.  So, therefore,

14:30:33  1  I wouldn't consider the response either because I hadn't read

14:30:36  2  the motion.

14:30:36  3          MR. WILLIAMS:  Yeah.  I understand that, Judge.  I

14:30:38  4  just -- you know, sometimes as a lawyer you fill like when

14:30:41  5  somebody says something, that it's your -- that you have some

14:30:46  6  obligation.

14:30:46  7          THE COURT:  Well, when a lawyer flips a lure out on

14:30:49  8  the water, you don't have to swim up and grab it.

14:30:53  9          MR. WILLIAMS:  All right.  Well, that's good advice

14:30:55 10  for not only fishing, but for lawyering.

14:30:58 11          As far as the issues in consolidation, as Mr. Hohmann

14:31:04 12  has pointed out, and in response to the issue that we're here

14:31:07 13  today, this is a case on causation based on whether or not

14:31:13 14  adequacy of warning was done -- was the warnings given by

14:31:18 15  Sandoz, did they comply with the FDA requirements? is what we

14:31:23 16  believe is the standard for adequacy of warning.  And we don't

14:31:27 17  think in either case that occurred, so we think they're similar

14:31:30 18  and we think that the ultimate issue in this case is exactly

14:31:35 19  the same for *Priest* and *Rusk*.  And how they fulfill that duty,

14:31:40 20  that's the ultimate question that's going to a jury.  And

14:31:43 21  that's the same question in both cases, so I think

14:31:46 22  consolidation is totally appropriate for that.

14:31:49 23          If there is no questions about any of it, Your Honor,

14:31:53 24  I will stop and not -- and try to get -- dislodge the lure from

14:31:58 25  my mouth and sit down.

14:32:00  1          THE COURT:  All right.  You may.  All right.  You may

14:32:03  2  sit down.

14:32:04  3          MR. WILLIAMS:  Thank you.

14:32:05  4          THE COURT:  All right.  I've got a lot of -- a lot of

14:32:08  5  things in these two cases.  There's been a lot of water under

14:32:12  6  the bridge in both of them.

14:32:14  7          The *Rusk* case is currently set for jury trial in

14:32:17  8  April of 2017, and the *Priest* case is set for jury trial in

14:32:22  9  February of 2018.  They are on separate paths to completion.

14:32:32  10  And the fact that there may be a delay in *Rusk* over the

14:32:38  11  guardianship isn't going to chew up a year between April -- or

14:32:47  12  10 months between April of 2017 and February of 2018.

14:32:53  13          I am, granted, great discretion under Rule 42(a) to

14:32:59  14  determine whether to consolidate a case or not to consolidate a

14:33:03  15  case.  There is a problem in cases like this with consolidating

14:33:10  16  them in that we do have two deaths.  The deaths allegedly are

14:33:17  17  linked to the Sandoz drug.  But we have drugs that were

14:33:23  18  manufactured at different times in different batches.  We have

14:33:28  19  and will have different testimony as to what the plaintiffs did

14:33:38  20  and did not do.

14:33:39  21          Those issues may to a large degree resolve themselves

14:33:48  22  as we proceed forward.  It is possible that the court may grant

14:33:54  23  partial summary judgment if filed in one or both cases

14:33:56  24  involving certain issues in the case and not grant a complete

14:34:00  25  summary judgment.  That type of determining issues, if they are

14:34:10  1  not disputed, then could lead to simpler ways to try the case

14:34:18  2  on -- the cases on damages.

14:34:19  3       I have found that it does not assist the concept that

14:34:24  4  people have of judicial economy to deal what the straight-up

14:34:34  5  obviousness in cases.  Number one, I don't believe there is

14:34:37  6  such a concept as judicial economy, at least not the Austin

14:34:42  7  Division of the Western District of Texas.  We have large

14:34:45  8  dockets here.  I'm going to come out and sit on the bench.  I

14:34:48  9  can try two cases or I can try one case.  If it's a difference

14:34:54  10 between a few hours, that's not a big problem for me.

14:35:01  11      I do think these cases are different.  I do think

14:35:04  12 they are on different time lines.  I do think the *Rusk* case is

14:35:07  13 on a faster track right now.  I do note that I think it is

14:35:11  14 November the 15th that dispositive motions are due?

14:35:16  15      MS. THOMPSON:  Yes, sir.

14:35:16  16      THE COURT:  I have heard a lot here today, and I do

14:35:24  17 not give any consideration to what one side or the other says

14:35:27  18 the other side's motivations are.  I just find that these cases

14:35:36  19 a not good candidates for consolidation.  And for those reasons

14:35:40  20 I'm going to exercise my discretion, and I will deny the

14:35:44  21 motions to consolidate the two cases.

14:35:50  22      That having been said, that does not judge any of the

14:35:53  23 issues that I have heard here today.  There may be other paths

14:36:04  24 or means that either the plaintiffs or the defendants care to

14:36:07  25 take from this point forward.  I'm not going to presume what

14:36:13  1  the outcome of the guardianship would be or who might be a

14:36:17  2  substituted party in the *Rusk* case.  I'm going to have to take

14:36:23  3  that up as it comes along.

14:36:25  4       I do urge the parties whenever there is anything that

14:36:31  5  happens outside of my presence in one of these two cases that

14:36:36  6  is significant, that you either get me a motion because you

14:36:39  7  think it changes the calculus or at least get me a status

14:36:43  8  report.  I urge all of you, because you're good professional

14:36:48  9  lawyers, from this point forward not to try to out-plead one

14:36:55  10  another but to be in contact on what ought to be done in this

14:36:58  11  case.

14:36:59  12       For instance, I'm going to have to have something

14:37:03  13  definite in front of me regarding whether or not Judith Rusk --

14:37:13  14  that's who we're talking about, isn't it? -- is still a party

14:37:17  15  to this case.  I am not prone to proceed forward without having

14:37:21  16  a party or party representative, but I don't have anything in

14:37:24  17  the record right now other than what was mentioned that lets me

14:37:28  18  know that she might not be an appropriate party in this case at

14:37:31  19  this point.  These are things that need to be presented to me.

14:37:35  20       I mentioned the fact that, if I granted a

14:37:39  21  continuance, the case wouldn't necessarily be put off until

14:37:44  22  February 2018.  You-all did appear at the initial pretrial

14:37:50  23  conference, and you heard what I had to say about my docket.

14:37:53  24  But let me tell you what exists with a large docket.  It's a

14:37:59  25  big docket, it's an imposing docket.  I use the analogy, if

14:38:05   1  there's big block of cheese blocking your path, the cheese of

14:38:09   2  my docket is Swiss cheese, it's not cheddar cheese.  It's big

14:38:14   3  and looks like you can't penetrate it, but there are various

14:38:19   4  little holes working their way and paths working their way

14:38:22   5  through it.  And there are more of those created every day

14:38:27   6  because cases get settled -- cases get settled off my docket.

14:38:34   7       So when I tell you that I have a large docket, it's

14:38:37   8  true.  But at any given moment it is also possible that I could

14:38:41   9  look at my calendar and tell you I could put you to trial next

14:38:45  10  week.  And I say that right now because I could tell you that

14:38:48  11  right now because I was set to start a two-week patent trial on

14:38:53  12  Monday that I had blocked everything out for and it settled

14:38:57  13  last Friday.  So now I have a gap when I can do other things.

14:39:02  14  Now, that scenario plays out down the line.  Sometimes I don't

14:39:08  15  get breaks, but often I do.

14:39:10  16       So if this case, the *Rusk* case, for whatever reason

14:39:16  17  were not to be tried in April of 2017 and it did survive

14:39:21  18  dispositive motions, I'm not -- I don't like to grant

14:39:29  19  continuances, but there is no reason to believe that, if I did

14:39:34  20  because we had to work out this party problem, that you would

14:39:39  21  get put off very long just because of the constant moving

14:39:44  22  around on my docket.

14:39:45  23       I know that some judges you appear in front of might

14:39:49  24  tell you that I'm now setting cases -- that that judge is

14:39:52  25  setting cases in late 2017 or early 2018, and that's the

14:39:58  1  earliest they're setting them.  I set my cases just the way

14:40:00  2  this came about with you-all.  We sit down at an initial

14:40:03  3  pretrial conference, we look at your proposed scheduling order,

14:40:07  4  how long you think it will take to get discovery out of the

14:40:10  5  way, expert information out of the way, how long it will take

14:40:18  6  you to file dispositive motions, and then we look and see what

14:40:21  7  trial date we have.  In some instances that trial date is

14:40:25  8  fairly far off, depending on what the lawyers tell me they need

14:40:28  9  to do in a case.  In other cases -- in fact, in many cases --

14:40:32  10  we go to trial in under a year from the initial pretrial

14:40:36  11  conference.  I fashion my docket as best I can based on what

14:40:42  12  the lawyers need.

14:40:43  13         So by denying the motion to consolidate, it doesn't

14:40:47  14  mean that any of the issues that were brought up by either --

14:40:52  15  or any party in this case are not still before the court, and

14:40:56  16  it may be that I need to deal with them on different types of

14:41:00  17  motions other than a motion to consolidate.  That does not mean

14:41:06  18  I agree that the motion to consolidate was indeed a

14:41:09  19  substitution for a motion for continuance.  I think they

14:41:13  20  involve two different things and two different matters.

14:41:17  21         What I do want you to do now that I've made this

14:41:19  22  ruling is to be in contact with one another.  Particularly I

14:41:25  23  want the plaintiff lawyers in the *Rusk* case to make sure that

14:41:31  24  the defendants know what the proceeding and scheduling is in

14:41:37  25  the Williamson County guardianship at all times.  I want you to

| | | |
|---|---|---|
| 14:41:41 | 1 | get to me something formal about that guardianship and keep me |
| 14:41:45 | 2 | advised as to what's going on.  I'm not going to interrupt the |
| 14:41:49 | 3 | scheduling order as it exists right now for that because I want |
| 14:41:55 | 4 | to go ahead in the *Rusk* case and get in dispositive motions. |
| 14:41:59 | 5 | But the plaintiffs need to understand, if they need |
| 14:42:04 | 6 | to file something else, they need to file something else.  So |
| 14:42:08 | 7 | that's where we are.  I think we can proceed right now with |
| 14:42:18 | 8 | *Rusk*, but I'm willing to change my mind if I get other |
| 14:42:23 | 9 | information before me.  I think that -- that, as I said, this |
| 14:42:32 | 10 | being the type of case it is, that the ones I've seen don't |
| 14:42:39 | 11 | lend themselves particularly well to consolidation even though |
| 14:42:47 | 12 | I can consolidate.  In spite of what the Multidistrict |
| 14:42:52 | 13 | Litigation Panel did, I think the MDL panel had a lot of |
| 14:42:56 | 14 | information about a lot of these cases and, for many of the |
| 14:43:02 | 15 | same reasons the MDL panel had in not combining them all around |
| 14:43:05 | 16 | the country, I'm not going to combine two of them in my court. |
| 14:43:09 | 17 | So the motion to consolidate is denied.  It is denied |
| 14:43:14 | 18 | without prejudice to the plaintiffs bringing up any of the |
| 14:43:22 | 19 | topics or issues that were expressed in the motion to |
| 14:43:24 | 20 | consolidate or were expressed in argument here today by means |
| 14:43:31 | 21 | of some other motion.  It is the ruling of this court that the |
| 14:43:35 | 22 | ruling on the motion to consolidate has no issue preclusion |
| 14:43:48 | 23 | result other than that I'm not going to consolidate the cases. |
| 14:43:51 | 24 | Now, while I have you in front of me and you-all are |
| 14:43:55 | 25 | here, is there anything else that any party wants to bring up |

14:44:00   1   with regard to either of the cases or anything else we should

14:44:06   2   do at this time?  I'll start with the plaintiffs.  Do you have

14:44:10   3   anything further?

14:44:11   4              MR. HOHMANN:  Your Honor, just a point of

14:44:13   5   clarification.  I want to make sure that -- the Court has

14:44:17   6   obviously taken it into account in its ruling, but I just

14:44:20   7   wanted to make sure the Court was aware of Document Number 115.

14:44:24   8   It was a supplement to our motion to consolidate the actions.

14:44:29   9   It contained a copy of the actual petition for guardianship, if

14:44:32  10   that's what they call it.  We will certainly keep the Court

14:44:38  11   aware -- opposing counsel as well -- of the status of those

14:44:42  12   proceedings.

14:44:42  13              THE COURT:  And anything further from the defendants?

14:44:44  14              MS. THOMPSON:  No, Your Honor.

14:44:45  15              THE COURT:  All right.  At this time thank you-all,

14:44:47  16   and the court is in recess.

0:0:0     17        (End of transcript)

          18

          19

          20

          21

          22

          23

          24

          25

1   **UNITED STATES DISTRICT COURT        )**

2   **WESTERN DISTRICT OF TEXAS            )**

3       I, Arlinda Rodriguez, Official Court Reporter, United

4   States District Court, Western District of Texas, do certify

5   that the foregoing is a correct transcript from the record of

6   proceedings in the above-entitled matter.

7       I certify that the transcript fees and format comply with

8   those prescribed by the Court and Judicial Conference of the

9   United States.

10      WITNESS MY OFFICIAL HAND this the 7th day of

11  November 2016.

12

13                                  /S/ Arlinda Rodriguez
                                    Arlinda Rodriguez, Texas CSR 7753
14                                  Expiration Date:  12/31/2016
                                    Official Court Reporter
15                                  United States District Court
                                    Austin Division
16                                  501 West 5th Street, Suite 4152
                                    Austin, Texas 78701
17                                  (512) 391-8791

18

19

20

21

22

23

24

25